## MAXEY et al. v. NOLAND et al.*
### No. 3511.

Court of Civil Appeals of Texas. Amarillo.
Sept. 10, 1930.

Rehearing Denied Oct. 8, 1930.

C. D. Russell, of Plainview, for appellants.

L. G. Mathews and L. C. Penry, both of Floydada, for appellees.

RANDOLPH, J.

The petition in this cause was presented to the Honorable Kenneth Bain, judge of the district court of Floyd county, Tex., and he certified his disqualification, which certificate is attached to the petition. Thereupon the plaintiffs presented their petition for injunction to the Honorable A. J. Fires, judge of the One Hundredth judicial district of Texas, who granted a temporary injunction restraining the defendants from proceeding further in the preparation for and the erection of a certain schoolhouse. From this temporary restraining order, appeal has been duly had to this court.

It appears from the record that Center district in Floyd county is a small common school district, and was such at the time of its designation as a high school district. The subject-matter of this controversy is whether or not the trustees of the common school district have the right to locate a schoolhouse in that district, or whether the location of said schoolhouse comes within the original jurisdiction of the county school board.

The appellants are the trustees of the common school district who are restrained from locating the schoolhouse, and they present the question by the following proposition:

"Unless the County Board of Trustees of Floyd County had original jurisdiction, or authority, to determine the location of the site for the new school building, appellees are not entitled to the injunction prayed for, even though it might be determined, under the facts and conditions, as they exist, that the new building should be erected at some place other than the present school house site."

Under this general proposition, several questions are presented, which will be discussed where material to the decision of the case.

The appellants contend that the petition contains no allegation that the high school was ever established according to law, and, furthermore, that the county school board, having no original jurisdiction, and the district court only having supervisory jurisdiction, and the matter not having been brought up by appeal in regular course, as provided by the statutes of Texas, the trial court had no jurisdiction to enter the injunction prayed for.

It is admitted that the common school district was legally in existence, but that, in attempting the establishment of a high school within the district, the petition fails to allege steps showing the legal establishment of same. This question is of no importance in view of our holding as below set out.

---

*For opinion denying writ of error, see 32 S.W.(2d) —.

The trustees of the common school district had the power and authority to locate schoolhouses in their district, even after such school had been designated as a high school by classification. On the other hand, the appellees contend that the county school board had original authority to locate schoolhouses or a schoolhouse, by designation and after designation of same as a high school.

Chapter 10, title 49, Revised Civil Statutes, contains provisions (articles 2655–2663), for the election of a state school superintendent and prescribes his duties, among which is to hear and determine all appeals from the rulings and decisions of subordinate school officers and teachers, and providing that all such officers and teachers shall conform to his decisions; he shall also prepare plans and specifications for school buildings for rural schools and upon request furnish same to school trustees.

Chapter 10 also provides (articles 2664–2675) for a state board of education, composed of the Governor, secretary of state, and comptroller, of which board the state superintendent shall be ex officio secretary thereof.

Chapter 11, title 49, art. 2676 et seq., provides for the creation of a county board of county trustees, and defines their duties.

Article 2681 provides as follows: "The county school trustees are authorized to exercise the authority heretofore vested in the commissioners court with respect to subdividing the county into school districts, and making changes in school district lines. Said trustees shall call an annual joint meeting of the district and county school trustees of the county to be held at the county seat at some convenient season in August or September of each year, to be presided over by the chairman of the county school trustees. They shall consider questions dealing with the location of high schools and the teaching of high school subjects, the classification of schools and such other matters as may pertain to the location, conduct, maintenance and discipline of schools, the terms thereof, and other matters of interest in school affairs of the county, and the county school trustees shall be guided in their action by the result of the deliberation of such meeting, not inconsistent with law. The county school trustees may also call other meetings of the district school trustees, when deemed necessary by them, or on the petition of a majority of such district school trustees. The county superintendent, as secretary of the county school trustees, shall keep an accurate and complete record in a well bound book provided for that purpose, the field notes of all changes made in school district lines, and of all proceedings of the county school trustees. A certified copy of such change in a school district line shall be made and transmitted by the county superintendent to the county clerk, and the county clerk shall record the field notes and certified copy of such change in a well bound book to be designated as the 'Record of School Districts.' In providing better schooling for the children and in carrying out the provisions of article 2678, the county superintendent shall, on the recommendation of the county school trustees, transfer children of scholastic age from one school district to another, and the amount of funds to be transferred with each child of scholastic age shall be the amount to which the district from which the child is transferred is entitled to receive."

Article 2682 provides that the district court shall have general supervisory control of the action of the county board of school trustees in creating, changing, or modifying school districts.

Article 2686 provides that all appeals from the decisions of the county superintendent shall lie to the county school trustees and from said county trustees to the state superintendent and thence to the state board of education.

Article 2749 provides as follows: "Said trustees shall have the management and control of the public schools and public school grounds; and they shall determine how many schools shall be maintained in their school district, and at what points they shall be located; provided, that not more than one school for white children and one school for colored children shall be established for each sixteen square miles of territory or major fraction thereof, within such district; and they shall determine when the schools shall be opened and when closed. They shall have the power to employ and dismiss teachers; but in case of dismissal, teachers shall have the right of appeal to the county and State Superintendents. They shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and State Superintendents; they shall approve all claims against school funds of their district; provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

From these provisions it will be seen that a supervisory control and not original jurisdiction is given both to the county board and to the district court. In the matter of the location of a schoolhouse in the district, the county school trustees had acted and located the schoolhouse at a definite place in the district. There was no appeal from this order, as required by the statutes, but the county board took up the matter of its own motion, and located the schoolhouse at another and different place. There was no appeal from this order, but the appellees go into court and seek an injunction restraining the trustees of the county school district from the erection of a building at the point designated by them.

Until the matter reached the county board by appeal and reached the district court by appeal under its supervisory jurisdiction, the district court had no jurisdiction to grant the writ.

We are aware that the Court of Civil Appeals at Dallas have passed upon this question in the case of Woodson et al. v. Stanley et al., 201 S. W. 659, practically holding to the contrary of what is held here; but the rule as laid down in the case of Bevers v. Winfrey (Tex. Civ. App.) 260 S. W. 627, that the burden rests upon those applying for mandamus or injunction to plead and prove affirmatively all facts necessary to entitle them to the writ and also by pleading and proof to negative the defensive matter, and, not having done so and not having shown that the case had been duly appealed to the various officers and boards, as provided in the statutes, the district court is without jurisdiction.

We therefore reverse the judgment of the trial court and here render judgment dismissing the case.

#### On Motion for Rehearing.

We are of the opinion that the county school board of Floyd county had no original jurisdiction to enter any order locating the Center schoolhouse in Center school district.

Article 2681, R. C. S. of Texas, provides and authorizes the county school board to exercise the authority heretofore vested in the commissioners' court with respect to subdividing the county into school districts and making changes in school district lines, and then provides further: "Said trustees shall call an annual joint meeting of the district and county school trustees of the county to be held at the county seat at some convenient season in August or September of each year, to be presided over by the chairman of the county school trustees. They shall consider questions dealing with the location of high schools and the teaching of high school subjects, the classification of schools and such other matters as may pertain to the location, conduct, maintenance and discipline of schools, the terms thereof, and other matters of interest in school affairs of the county, and the county school trustees shall be guided in their action by the result of the deliberation of such meeting, not inconsistent with law. * * *"

The county board is permitted by that portion of the article last quoted to act in conjunction with the meeting of the district trustees to consider questions dealing with the location of high schools and the teaching of high school subjects. It is apparent from the language that such regulatory action must be in conjunction with the district trustees, and, further, the language used indicates, not the location of schoolhouses in the districts, but whether high schools shall be created and located in any certain common school district.

The record discloses that the common school trustees had located the new schoolhouse upon a certain tract of land in Center common school district. Without an appeal from this order the county board decreed its location on another tract in said district; hence, no appeal having been perfected from the rule and order of the common school trustees, the county board was without jurisdiction to enter the order passed by them. Hibbitts et al. v. Robison et al. (Tex. Civ. App.) 281 S. W. 574.

The county board having no original authority to enter the order they did, and there being no appeal from the order of the common school trustees locating the schoolhouse, the order of the common school trustees became final, and it was error on the part of the district court to render the judgment it did render.

For the reason that the disposition of the case made in the original opinion is correct, we again approve it, and the motion for rehearing is overruled.